# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **CHARLES EDWARD BINNS,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:13CV00086 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **COMMONWEALTH OF VIRGINIA,** | ) | By: James P. Jones |
| **DEPARTMENT OF CORRECTIONS,** | ) | United States District Judge |
| **ET AL.,** | ) | |
| | ) | |
| Defendants. | ) | |

*Melvin E. Williams, Mel Williams PLC, Roanoke, Virginia, for Plaintiff; Margaret Hoehl O'Shea and Richard C. Vorhis, Assistant Attorneys General, Office of the Attorney General of Virginia, Richmond, Virginia, for Defendants Commonwealth of Virginia, Department of Corrections, A. Eugene Whited, Warden L. Flemming, and D.A. Braxton; and Elizabeth M. Muldowney, Rawls McNelis + Mitchell, PC, Richmond, Virginia, for Defendants Gerald T. Hopkins, M.D., John D'Alessandro, P.A., Carey Hawks, L.P.N., Wanda Shelton, L.P.N., and Tallis Lester, L.P.N.*

Charles Edward Binns is a 49-year-old inmate in the Virginia prison system. In 2011 he was assaulted by another inmate wielding a "lock in a sock," an all-too-common prison weapon, consisting of a heavy padlock placed in the toe end of a sock, swung like a medieval flail. Binns suffered a detached retina in his right eye from the attack. Following the injury, he was seen by an ophthalmologist who advised that he needed an urgent consultation with a retinal surgeon.[1] Binns

---

[1] "Retinal detachment is a disorder of the eye in which the retina peels away from its underlying layer of support tissue. Initial detachment may be localized or broad, but

and his fiancée allege that they tried without success to obtain this medical treatment until finally, over three months after the attack, he was taken to a retinal surgeon who advised him that it was too late, that his retina had completely detached and nothing could be done to restore the vision in his affected eye.

Binns then filed suit in this court against various prison officials pursuant to 42 U.S.C. § 1983, contending that the loss of his vision was due to their deliberate indifference to his serious medical condition, in violation of his Eighth Amendment right to be free from cruel and unusual punishment. He also alleged comparable violations of the Virginia Constitution as pendent state law claims. The defendants responded by filing motions to dismiss and/or motions for summary judgment. A principal ground of all of the motions is that the plaintiff failed to exhaust his available administrative remedies before filing suit, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a), and Virginia law, Va. Code Ann. § 8.01-243.2.

The defendants' motions were referred to the magistrate judge for report and recommendation. After conducting an evidentiary hearing, the magistrate judge recommended that summary judgment be entered in favor of the defendants because Binns had admitted that he had not filed any "Informal Complaint or

without rapid treatment the entire retina may detach, leading to vision loss and blindness. It is almost always classified as a medical emergency." Retinal Detachment, *Wikipedia*, http://en.wikipedia.org/wiki/Retinal_detachment (last visited March 27, 2015).

regular Grievance regarding the lack of appropriate, prompt medical treatment." (Report & Recommendation 10, ECF No. 55.) The plaintiff has timely objected to the Report and Recommendation, which objections have been fully briefed.[2] Based on the record, and even accepting the magistrate judge's factual findings, I conclude that the defendants have not satisfied their burden of establishing exhaustion as an affirmative defense. Accordingly, I will not accept the magistrate judge's recommended disposition of the case.

## I.

The following are the facts taken from the record before the magistrate judge.[3]

There is a system-wide inmate grievance procedure in Virginia, set forth in a document called Operating Procedure 866.1, introduced at the evidentiary hearing. (Ex./Witness List, ECF No. 54-1, hereinafter cited as "OP 866.1.) Binns has been in prison for many years — he is serving a life sentence — and has been housed at approximately 12 or 13 separate VDOC institutions. Binns testified that he had participated in inmate intake orientation, including explanation of prison grievance

---

[2] I will dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not significantly aid the decisional process.

[3] Three witnesses testified during the magistrate judge's evidentiary hearing: (1) Captain Shawn Owens, a grievance coordinator with the Virginia Department of Corrections ("VDOC"); (2) the plaintiff; and (3) Mary Alice Trent, Binns' fiancée.

procedures, at some, although not all, of these institutions. Among other things, the procedure includes an "Informal Complaint," which is a prerequisite to a "Regular Grievance," which in turn includes three levels of appeal. There is also a separate "Emergency Grievance," for situations or conditions that may subject the inmate to "immediate risk of serious personal injury or irreparable harm." (OP 866.1 § VII.A.)[4]

The assault on Binns occurred on October 31, 2011, at the Pocahontas Correctional Center ("PCC"). Following the attack, Binns was taken to a hospital in nearby Bluefield, West Virginia, and then to the Virginia Commonwealth University Medical Center ("VCUMC")[5] in Richmond, Virginia. At VCUMC it was "recommended that Mr. Binns be examined and treated by an ophthalmologic specialist and by an ear, nose and throat (ENT) specialist within three to five days after his examination." (Compl. ¶ 39, ECF No. 1.) Binns testified, however, that he had not been personally informed at this time regarding the extent of his injury or the need for further treatment.

---

[4]    The date of OP 866.1 introduced into evidence by the defendants is December 1, 2010, as amended on January 17, 2012, March 3, 2012, and August 8, 2012. Captain Owens testified that he was uncertain of the nature of the amendments. (Hr'g Tr. 55, ECF No. 68.) The copy of OP 866.1 introduced into evidence did not include any of the "attachments" referenced in the document.

[5]    Based on testimony at the evidentiary hearing, the magistrate judge's recommendation refers to this facility as the "Medical College of Virginia ("MCV"), Hospital." The correct name is used in this opinion.

After his release from VCUMC, Binns was transported back to PCC. Within days, he was transferred to Keen Mountain Correctional Center ("KMCC"), located an hour and a half away. Upon his arrival there, Binns was placed in segregation. Binns testified that no orientation had occurred at KMCC, and no one had explained the grievance procedure or provided him with an orientation handbook. In contrast, Captain Owens testified that all inmates — even those who are segregated for medical reasons — are orientated upon arrival and provided a copy of the grievance operating procedure as a component of the orientation handbook. Captain Owens, however, did not have personal knowledge of Binns' individual intake experience at KMCC.

Binns also testified that even if he had been provided an orientation handbook, he could not have read it because he could not see out of his right eye and his vision in his left eye was blurry. Binns' testimony conflicts, however, with a document he signed on November 15, 2011, which indicates that he was present for orientation at KMCC and received "DOP #866 'Inmate Grievance Procedure.'" (ECF No. 54-16.) Binns acknowledged that he signed this form, but did so merely to leave segregation and enter the general population at KMCC.

Four or five days after being transferred to KMCC, Binns was transported to Abingdon, Virginia, to be seen by an ophthalmologist in private practice, F. Ellison

Conrad, M.D.[6]  According to the Complaint in this lawsuit, this examination

occurred on November 14, 2011.  Binns testified that Dr. Conrad had been of the

opinion that Binns could not see out of his right eye because the interior of his

eyeball was full of blood.  Dr. Conrad prescribed eye drops to reduce pressure in

his eye and recommended that he return in two weeks.  After the examination,

several days passed before Binns received and started using the prescribed eye

drops.

After being held in segregation for 10 days, Binns was released into the

general population at KMCC.  Upon release from segregation, Binns stated that he

had his cellmate complete an Emergency Grievance form on his behalf.  At the

time, Binns was unable to personally complete the form as a result of his injuries.

This Emergency Grievance form was dated November 16, 2011.  It states:

> Attn:  Nurse Boyd[.]  I'm in pain my eye fill [sic] like it is coming out
> my head.  I can't see out my right eye the pain is killing me[.]  I need
> my pain medication.  I can't sleep for the pain and blood in my eye
> Mrs. Boyd.  The pain pills will help me some[.]  Please give me
> something for this pain Mrs. Boyd[.]  I'm in pain[.]  I can't not [sic]
> sleep[.]  Thank you for your assistance in this matter Mrs. Boyd RN[.]
> I was hit in my eye blood in eye[.]

(ECF No. 54-6.)  A few hours after the form was signed, Nurse Boyd responded to

Binns' Emergency Grievance by indicating on the form that it did not meet the

definition of an emergency and writing that "you were seen & given medication &

---

[6]  The Complaint refers to Dr. Conrad, incorrectly, as "Dr. Carson."  (Compl. ¶ 46, ECF No. 1.)

instructed to get on sick call in AM." (*Id.*) Binns was provided Motrin for his pain.

On November 19, 2011, Binns submitted a second Emergency Grievance form stating:

> I received an eye injury on 11-1-11 which left me blind in the right eye. I whent [sic] outside of the Institution to see a [sic] eye specialist on 11-14-11 while at K.M.C.C., and this eye specialist prescribed some medication for my eye. This medication is to reduce the pain that I'm having and clear up the blood in my eye so that the Eye Doctor may try to get my eye sight back. I was prescribed this medication on 11-14-11 and today is 11-19-11 and I still do not have this medication. I am in a lot of pain and I needs [sic] this medication. Thank You.

(ECF No. 54-7.) A few hours after the form was signed, a response was provided stating that "your medication is ordered and was shipped 11/18/11 per the computer. Your grievance does not meet the definition of an emergency — as for the issue of pain we can supply Motrin for a few days to help — I'll send some by the night nurse."[7] (*Id.*)

---

[7] Binns filed a third Emergency Grievance on December 15, 2011. In this Emergency Grievance, Binns only seeks treatment for injuries to his hand. Similarly, on January 6, 2012, Binns filed a fourth Emergency Grievance that addressed a financial charge he had received for an X-ray of his hand. The fourth Emergency Grievance was not contained in the record produced by Captain Owens.

Additionally, Binns also submitted three Informal Complaints at KMCC that did not address his vision problems. In these Informal Complaints, Binns raised a variety of issues associated with not receiving an ordered commissary purchase, his inmate account balance, and his security level.

Binns was eventually taken to see Dr. Conrad a second time. According to the Complaint, the second examination occurred on December 22, 2011. At this time, the blood in Binns' right eye had cleared up; however, Dr. Conrad told Binns that the reason he could not see was because the retina was detached. According to Dr. Conrad's examination notes, he "discussed with [Binns] & guard the need for urgent consultation with retinal surgeon / recommended Dr. Allen Couch." (ECF No. 54-13.) Prior to this discussion, Binns testified, he had not known that he needed treatment by a retinal surgeon.

Mary Alice Trent, Binns' fiancée, testified that she had learned that Binns needed to see a retinal surgeon after speaking to him following his examination by Dr. Conrad. Trent testified that she then had spoken, either in person or by phone, with various VDOC officials, including defendants Braxton, Fleming, Lester, and Whitten, in an effort to address the delay in Binns' treatment.

On December 29, 2011, Binns returned to see Dr. Conrad a third time. Pursuant to Dr. Conrad's examination notes, he was "uncertain as to why [Binns] needed to be seen in this office today . . . . . still STRONGLY recommend urgent consultation with retinal surgeon – see office note of 12/22/2011." (ECF No. 54-14.)

On January 5, 2012, Binns submitted an Informal Request form[8] stating:

> I would like to know what's the status on me being "strongly recommended" by the Eye Doctor (Dr. Conrad), whom I went to see on 12-22-11 in Abingdon, VA. Dr. Conrad had written in his notes to you that he "strongly recommends" that I see the Retina Surgeon a (Dr. Couch). Am I scheduled to go see this Retina Surgeon (Dr. Couch) that Dr. Conrad recommended for me to see?? Thank you very much.

(ECF No. 54-12.) This form was returned to Binns because he had placed it in "the institutional medical box," and not in the "institutional mail." (*Id.*) Binns did not resubmit this Informal Request because he believed that the prison rules prohibited repeating a request. (Hr'g Tr. 93.)

Binns testified that thereafter he had been taken to see a Dr. Lara, a retinal specialist in Abingdon. Binns stated that Dr. Lara had told him that he needed surgery to reattach his retina. Binns believed that he was scheduled for such surgery, which was to occur after an upcoming transfer to yet another prison, Greensville Correctional Center ("GCC"), located south of Richmond, in Jarratt, Virginia, some six hours away. (Hr'g Tr. 102-03.)

---

[8] According to Captain Owens, an Informal Request is different from an Informal Complaint. For example, Captain Owens testified that "an informal request is designated for simply that, a request: if a guy wants to be placed on the list to go to religious services or something." (Hr'g Tr. 51.) Furthermore, Captain Owens stated that an Informal Request is "not intended for a medical condition, medical complaint, anything of that." (*Id.* at 67.) However, the form itself contains a selection place for "Medical (Nurse/Physician)," which was selected by Binns in completing the form. (ECF No. 54-12.) Regardless, the form itself states that "[i]t is not the appropriate form to use prior to filing a Regular Grievance." (*Id.*)

-9-

Binns was transferred to GCC sometime around February 1, 2012. Binns testified that after being transferred to GCC, he had filed an Informal Complaint in regard to obtaining the surgery. (Hr'g Tr. 131.) A copy of this document is not in the present record.[9] Binns agreed that he had not followed it up with a Regular Grievance, as required by the grievance procedure. (Hr'g Tr. 131.)

After being at GCC for six days, Binns testified that he had been taken to see a retinal surgeon on or about February 6, 2012. Binns stated that the retinal surgeon had told him that his retina had completely detached and that there was nothing that could be done to restore the vision in his right eye.

Binns testified that after being informed that his vision could not be restored, he had not filed any further complaints or grievances, because it was too late to save his eyesight. Stated differently, Binns testified that the basis for his efforts was to see a retinal surgeon, and after finally seeing one there was nothing that could be done to restore his vision.

In her Report and Recommendation, the magistrate judge found as a fact that Binns had never filed either an Informal Complaint or a Regular Grievance regarding his eye problem. Moreover, she found that he had admitted that he had received orientation on the grievance process at the institutions where he had been

---

[9] Captain Owens had researched only the grievance records at KMCC. (Hr'g Tr. 28).

-10-

housed prior to his transfer to KMCC.  Finally, she held that the undisputed efforts by Binns and his fiancée to obtain medical treatment for him was not a legal substitute for compliance with the prison's grievance procedure.

II.

If a party objects to a magistrate judge's recommendation, I am required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  I "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  *Id.*

Binns asserts two arguments challenging the magistrate judge's conclusion that he did not exhaust his available administrative remedies before filing suit. First, Binns contends that there was no relief to him through the administrative process and therefore the exhaustion requirement was satisfied.  Second, Binns argues that the Emergency Grievances he filed satisfied the exhaustion requirement.

Pursuant to the Prison Litigation Reform Act ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a); *see also* Va. Code Ann. § 8.01-243.2 ("No person confined in a state or

local correctional facility shall bring or have brought on his behalf any personal action relating to the conditions of his confinement until all available administrative remedies are exhausted."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life," *Porter v. Nussle*, 534 U.S. 516, 532 (2002), and "an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues," *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "Even when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit." *Porter*, 534 U.S. at 524.

As a procedural matter, exhaustion is mandatory; therefore, a court lacks the authority to waive it as a requirement. *See Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust will bar actions filed by inmates, including those under 42 U.S.C. § 1983. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006). However, "failure to exhaust available administrative remedies is an affirmative defense . . . and thus inmates need not plead exhaustion, nor do they bear the burden of proving it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

-12-

A.  Absence of Available Relief.

Binns' first argument is that he "should not be required to appeal and file grievances when no relief can be obtained."  (Pl.'s Objections to Report and Recommendation 3, ECF No. 61.)

In *Booth v. Churner* the Supreme Court held that an inmate must exhaust administrative remedies "regardless of the relief offered through administrative procedures."  532 U.S. at 741.  Therefore, an inmate must exhaust administrative remedies when "the administrative process has authority to take *some* action in response to a complaint," even if the inmate only seeks monetary damages that are not available through that process.  *Id.* at 736 (emphasis added).  However, the *Booth* court noted that "[w]ithout the possibility of *some* relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust."  *Id.* at 736 n.4 (emphasis added).  The lack of "some" relief did not exist under the facts in *Booth*, with the Court noting that neither party "argue[d] that exhaustion is required where the relevant administrative procedure lacks authority to provide *any* relief or to take *any* action whatsoever in response to a complaint."  *Id.* at 736 (emphasis added).

In this case, there is no evidence that any administrative relief or remedy was available to Binns once the loss of vision in his right eye became permanent.

In other words, VDOC could have provided further medical care before Binns' vision loss became permanent but not thereafter.

The prison's grievance procedure makes this clear. For example, pursuant to OP 866.1, "[t]he grievance should afford a successful grievant a meaningful remedy when applicable. . . . All grievances determined as founded will be provided an administrative remedy and should, if necessary, include an offender remedy." (OP 866.1 § IV.M.) Individual offender remedies should provide "[r]edress to the grievant as appropriate ([for example] protection of the grievant . . . timely medical attention or treatment, improvement of living conditions, etc.). The redress should be made in a timely manner." (*Id.* § IV.M.2.) In Binns case, there is no showing of any further medical care that could have been provided to Binns once the loss of vision in his right eye became permanent. Accordingly, exhaustion of the present claim is not required.

### B. Emergency Grievances.

Binns' second argument is that he satisfied the exhaustion requirement through his Emergency Grievances. As an initial matter, I note that only two of the Emergency Grievances filed by Binns' relate to the subject matter of this litigation. For example, the third Emergency Grievance, filed on December 15, 2011, only

addresses injuries to Binns' hand.  Therefore, Binns' argument is only applicable to the Emergency Grievances filed on November 16 and 19, 2011.[10]

As a Virginia inmate, Binns was required to exhaust his claims in accord with the grievance procedure established by the VDOC.  *See Woodford*, 548 U.S. at 93.  Specifically, he was required to comply with the previously referenced OP 866.1, which sets forth the "Offender Grievance Procedure" for inmates in VDOC institutions.

As stated by the Supreme Court,

> to properly exhaust administrative remedies prisoners must "complete the administrative review process in accordance with the applicable procedural rules," . . . rules that are defined not by the PLRA, but by the prison grievance process itself.  Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to "properly exhaust." . . . [I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion.

*Jones v. Bock*, 549 U.S. 199, 218 (2007) (internal citations omitted).

According to the copy of OP 866.1 submitted to this court, an "Emergency" is defined as "[a] situation or condition which may subject the offender to immediate risk of serious personal injury or irreparable harm."  (OP 866.1 § III.) OP 866.1 sets forth the specific procedures for addressing "Emergency

---

[10]    Similarly, the three Informal Complaints submitted by Binns are also not related to his loss of vision and are not relevant to the subject matter of this litigation. Additionally, the Informal Request form submitted by Binns on January 6, 2012, discloses on its face that it is not a step in the regular grievance procedure, nor was it appealed following its rejection.

Grievances." (*Id.* § VII.)  This action is independent from other subdivisions in OP 866.1 that address the informal complaint and regular grievance procedures.  (OP 866.1§§ V, VI.)

Pursuant to Section VII, "[s]pecial provisions are made for responding to situations or conditions" that constitute emergencies.  (*Id.* § VII.A.)  "The staff person who received the *Emergency Grievance* will determine what action needs to be taken in accordance with specific instructions in the implementation memorandum [for the institution at issue]." (*Id.* § VII.D.1.)  "The implementation memorandum will designate who may serve as respondents to *Emergency Grievances*." (*Id.* § VII.E.1.)  "[T]he designated staff person should determine if he/she can address the issue or if the *Emergency Grievance* should be forwarded to a higher authority for resolution.  The *Emergency Grievance* should receive response from the level at which corrective action can be taken." (*Id.* § VII.E.3.)

Unlike the regular grievance procedure, the provisions for Emergency Grievances do not require appeal of unfavorable intake decisions or grievance responses.  (OP 866.1 § VI.)  The general "Appeals" provision of OP 866.1 does not apply in this context, because it states that "[a]n offender who is dissatisfied with the response to a *grievance* may appeal by signing, dating, and indicating in the designated area reasons why he/she is dissatisfied with the prior response." (*Id.* § IV.G.2 (emphasis added).)  Pursuant to OP 866.1 a "Grievance" is defined as

-16-

"[a]n unresolved issue filed and signed by an individual offender on his/her own behalf concerning an issue which has affected him/her personally *and meets intake criteria*." (*Id.* § III (emphasis added).)   In this case, the two Emergency Grievances filed by Binns were rejected at intake as not constituting emergencies, and therefore would not be subject to appeal under the general appeals provision of OP 866.1.

More generally, the defendants assert that Binns was required to file an Informal Grievance to further pursue issues raised in his rejected Emergency Grievances in order to begin the process of properly exhausting his administrative remedies under OP 866.1.  In many ways, the defendants' position in this case is analogous to that of prison officials in *Thornton v. Snyder*, 428 F.3d 690 (7th Cir. 2005).  In *Thornton*, prison officials argued that once the inmate's grievance was rejected as not constituting an emergency, the inmate's grievance ceased to exist. *Id.* at 694.   The *Thornton* court rejected this argument, stating that "[t]here is nothing in the current regulatory text, however, that requires an inmate to file a new grievance after learning only that it will not be considered on an emergency basis." *Id.*   Interestingly, in *Thornton*, unlike the case before this court, the prison procedures specifically provided a right of appeal for a grievance subject to a request for emergency treatment. *Id.*

*Thornton* is instructive in this case, because it demonstrates that grievance procedures are to be strictly construed and applied as written. I believe that this approach is required in this case as well. Based on the current record before this court, the defendants have failed to establish that the rejection of an Emergency Grievance does not satisfy the exhaustion requirement of the PLRA based on the language of OP 866.1.

It is true that Captain Owens testified that in his opinion the "next step" for an inmate after filing an unaccepted Emergency Grievance would be to file an Informal Complaint (Hr'g Tr. 31, 32), but absent any such requirement in the OP 866.1 or other official policy communicated to inmates, I cannot find that an Emergency Grievance does not qualify for the exhaustion requirement.

I acknowledge that numerous courts, including this one, have previously stated that the filing of an Emergency Grievance does not satisfy the exhaustion requirement under VDOC procedures. *See Makdessi v. Clarke*, No. 7:14CV00225, 2014 WL 2119817, at *4 (W.D. Va. May 21, 2014); *Rountree v. Clarke*, No. 7:11CV00572, 2014 WL 4923964, at *5 (W.D. Va. Mar. 24, 2014); *Walsh v. Clarke*, No. 7:12-cv-00587, 2013 WL 3936777, at *3 (W.D. Va. July 30, 2013); *Washington v. Sykes*, No. 7:12-cv-00437, 2013 WL 3729996, at *4 (W.D. Va. July 15, 2013); *Crayton v. Fleming*, No. 7:12-cv-00276, 2012 WL 2527843, at *1 (W.D. Va. June 29, 2012); *Blount v. Boyd*, No. 7:05CV00643, 2006 WL 3246251,

-18-

at *3 n.4 (W.D. Va. Nov. 7, 2006); *Walton v. Johnson*, No. 2:06cv258, 2006 WL 2076717, at *5 (E.D. Va. July 21, 2006); *Grimes v. Fowler*, No. 2:01CV70526, 2003 WL 1342984, at *1 (W.D. Va. Mar. 19, 2003). These cases, however, rely on evidence not presented here, *see, e.g.*, *Fowler*, 2003 WL 1342984, at *1; or provide no citation at all, *see, e.g.*, *Makdessi*, 2014 WL 2119817, at *4.

It is plain that the Emergency Grievances filed by Binns do not expressly seek to see a retinal surgeon. However, they do request further medical treatment as to Binns' right eye injury. Moreover, at the time of these grievances, Binns had not been told that he needed to see a retinal surgeon; that came only a month later, with his second visit to Dr. Conrad.[11]

Under these circumstances, I conclude that the filing of the Emergency Grievances by Binns satisfied the exhaustion requirement based on the facts of this case and the record currently before this court.

---

[11] Binns' also argues, as an alternative, that he should not be held accountable for his failure to exhaust because he was prevented from availing himself of an administrative remedy at KMCC through no fault of his own. More specifically, Binns asserts that after he was transferred to GCC on February 1, 2012, any grievance he would have filed regarding events at KMCC would have been rejected outright. OP 866.1 states, however, that "[i]f the offender has been transferred, the offender should submit the informal complaint and subsequent grievance to the facility where the issue originated." (OP 866.1 § VI.A.2.b.) Pursuant to this procedure, Binns would have been unable to submit a grievance regarding events that occurred at KMCC to GCC, but his grievance could have been directed to KMCC. Although burdensome, Binns was not prohibited from submitting a grievance to KMCC following his transfer to GCC.

-19-

III.

For these reasons, I find, based upon the record before me, that the defendants have not proved their affirmative defense of lack of exhaustion of administrative remedies. [12] Because the magistrate judge recommended dismissal on the basis of exhaustion, she did not reach the other alternative grounds asserted by certain defendants. Rather than remand the case for determination of those issues, in the interests of judicial economy I will resolve them myself.

In his Complaint, Binns asserts a claim under article I, section 11, of the Constitution of Virginia, guaranteeing due process of law. Certain of the defendants contend that no private right of action exists in state law under this section. *See Boren v. Nw. Reg'l Jail Auth.*, No. 5:13cv013, 2013 WL 5429421, at *11 (W.D. Va. Sept. 30, 2013) (citing *Botkin v. Fisher*, No. 5:08CV00058, 2009 WL 790144, at *6 (W.D. Va. Mar. 25, 2009)). I agree, and will dismiss this particular claim.

---

[12] Binns also complains about blurry vision in his left eye, but there is no allegation that that condition resulted from the assault. As part of this lawsuit, he seeks injunctive relief against the Commonwealth of Virginia, Department of Corrections, "to provide adequate medical treatment . . . to recover, preserve and save the vision in his left eye." (Compl. ¶ 93.) However, none of Binns' arguments save this claim from the affirmative defense of lack of exhaustion of administrative remedies. Accordingly, I will dismiss any claim as to his left eye.

Finally, the defendant John D'Alessandro, P.A., moves to dismiss the Complaint against him on the ground that insufficient facts are alleged to charge him with deliberate indifference to the medical needs of the plaintiff.

While the court must accept the plaintiff's factual allegations as true, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain sufficient facts from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has "shown" that he is entitled to relief. *Id.* at 679.

I agree that the allegations against this particular defendant are insufficient under the applicable standards that I must follow. Accordingly, he will be dismissed as a party defendant.

IV.

For the foregoing reasons, it is **ORDERED** as follows:

1. Plaintiff's Objections to Report and Recommendation (ECF No. 61) are SUSTAINED;

2. The Report and Recommendation (ECF No. 55) is NOT ACCEPTED; and

3. All pending motions by the defendants seeking to dismiss the action or for summary judgment (ECF Nos. 12, 22, 27, and 47) are DENIED, except that

-21-

(a) any claims based upon article I, section 11, of the Constitution of Virginia, are DISMISSED; (b) any claims against defendant John D'Alessandro, P.A., are DISMISSED without prejudice and said defendant is TERMINATED as a party hereto; and (c) any claims for injunctive relief against the Commonwealth of Virginia, Department of Corrections, relating to medical treatment of the plaintiff's left eye, are DISMISSED without prejudice for failure to exhaust administrative remedies.

ENTER:  March 30, 2015

/s/  James P. Jones

United States District Judge